FOX, Justice.
[¶1] This is a wrongful death case arising from the tragic death of a seven-year-old girl, who was struck and killed in a crosswalk on her way home from school. The driver held a valid Wyoming driver's license even though she had monocular vision, a glass eye, and could not have passed the eye exam, which was administered by an employee of the Wyoming Department of Transportation (WYDOT). The child's parents sued the WYDOT, the City of Riverton, Fremont County School District No. 25, and various employees of those governmental entities, asserting claims for wrongful death, negligent infliction of emotional distress, and loss of parental consortium (on behalf of the child's siblings). The claims against the school district and its employees were dismissed and Appellants do not appeal that decision. The district court held that governmental immunity barred the claims against the WYDOT, the City of Riverton, and their employees, and dismissed the complaint. Appellants appeal that order, and we affirm.
ISSUES
[¶2] 1. Does the WYDOT's performance of eye exams constitute a public service for which governmental immunity has been waived by Wyo. Stat. Ann. § 1-39-108 ?
*145 2. Did the City of Riverton provide a public service for which governmental immunity has been waived by Wyo. Stat. Ann. § 1-39-108 when it provided a marked street crossing?
3. Did the Appellants preserve a claim that the governmental entities waived immunity under the insurance coverage exception at Wyo. Stat. Ann. § 1-39-118(b)(i) ?
FACTS
[¶3] Because this is an appeal from an order granting motions to dismiss, "we accept the facts stated in the [amended] complaint as true and view them in the light most favorable to the plaintiff[s]." Town of Pine Bluffs v. Eisele , 2017 WY 117, ¶ 8, 403 P.3d 126, 128 (Wyo. 2017).
[¶4] Sophia Archer and her sister, LA, were crossing the street at a marked crosswalk on their way home from school when Sophia was struck by a motor vehicle driven by Sandra Pennock. Sophia's mother, Ryann Archer, and her sister, OA, arrived at the scene while witnesses were performing CPR and before police officers had arrived. Sophia Archer suffered numerous injuries and likely died at the scene. Sandra Pennock received a driver's license from the WYDOT after successfully completing an eye exam, which it would have been impossible for her to pass in light of her monocular vision and glass eye. The WYDOT issued a handicapped vehicle identification to Ms. Pennock in 2015, two months before the accident, which noted her severe visual or audio handicap. The amended complaint alleges that the WYDOT eye examiner, defendant Jane Doe, "was a public employee acting within the scope of her employment and duties with the Wyoming Department of Transportation ...."[1] Allegations against the City of Riverton and its employee, Kyle Butterfield,[2] "acting within the scope of his employment and duties,"[3] are that they were negligent in some way that caused the damage.
[¶5] The district court granted the motions to dismiss of the WYDOT and the City, finding that no exception to governmental immunity applied. This appeal was timely filed.
DISCUSSION
[¶6] The Archers present several arguments to avoid the harsh results of governmental immunity under the Wyoming Governmental Claims Act (WGCA), Wyo. Stat. Ann §§ 1-39-101 through 1-39-121 (LexisNexis 2017). First, they contend, the actions of the WYDOT and the City fall under the exception to governmental immunity for operation of public utilities at Wyo. Stat. Ann. § 1-39-108. The Archers further argue that immunity is waived by the WYDOT because the eye exam service is also available through private parties. With respect to both the WYDOT and the City, the Archers contend that the "insurance coverage exception" to governmental immunity at Wyo. Stat. Ann. § 1-39-118(b)(i)"may waive immunity." Finally, the Archers argue that strict application of governmental immunity is simply unconscionable. We will address the latter argument first.
[¶7] In 1978, this Court abolished the doctrine of municipal immunity and declared that "[h]enceforth, the rule is liability and the exception is immunity ...." Oroz v. Bd. of Cty. Comm'rs of Carbon Cty. , 575 P.2d 1155, 1158 (Wyo. 1978). In response, in 1979, the Wyoming legislature enacted the WGCA, recognizing the "inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity," yet seeking "to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers."
*146 Wyo. Stat. Ann. § 1-39-102(a). That balance was struck by a general grant of immunity to "a governmental entity and its public employees while acting within the scope of duties ... except as provided by W.S. 1-39-105 through 1-39-112." Wyo. Stat. Ann. § 1-39-104(a) (emphasis added). Now that the legislature has determined by statute how these equities should be balanced, it is the job of the courts to apply those statutes to the facts before them. The Archers suggest that this Court should decide, as we did in Brown v. City of Casper , 2011 WY 35, ¶ 43, 248 P.3d 1136, 1146 (Wyo. 2011), to depart from precedent "to vindicate plain, obvious principles of law and remedy continued injustice." There, however, we did not presume to override the statutory balance enacted by the legislature, but, rather, we recognized that our caselaw interpreting the statutory and constitutional provisions on jurisdiction had been mistaken. Id. at ¶ 9, 248 P.3d at 1139.
In interpreting the WGCA, we apply the following rules of statutory interpretation:
When we interpret statutes, our goal is to give effect to the intent of the legislature, and we "attempt to determine the legislature's intent based primarily on the plain and ordinary meaning of the words used in the statute." Krenning v. Heart Mountain Irrigation Dist. , 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009). Statutory interpretation presents a question of law, so our review of the district court's conclusions is de novo . Id. ; Sinclair Oil Corp. v. Wyo. Dep't of Revenue , 2010 WY 122, ¶ 7, 238 P.3d 568, 570 (Wyo. 2010).
With specific regard to the Wyoming Governmental Claims Act, we have said that we should not "enlarge, stretch, expand[,] or extend" the statutory language to include "matters not falling within its express provisions." State v. Watts , 2008 WY 19, ¶ 19, 177 P.3d 793, 798 (Wyo. 2008). Instead, we use our "standard rules" of statutory interpretation "to determine whether the legislature intended that immunity be waived for a particular claim and will not resort to reliance upon previous unsupported and unnecessary suggestions that the act is to be interpreted either liberally or strictly." Id. , ¶ 20, 177 P.3d at 798-99.
Fugle v. Sublette Cty. Sch. Dist. No. 9 , 2015 WY 98, ¶ 8, 353 P.3d 732, 734-35 (Wyo. 2015) (quoting Stroth v. North Lincoln Cty. Hosp. Dist. , 2014 WY 81, ¶ 7, 327 P.3d 121, 125 (Wyo. 2014) ).
I. Does the WYDOT's performance of eye exams constitute a public service for which governmental immunity has been waived by Wyo. Stat. Ann. § 1-39-108 ?
[¶8] The Archers contend that the WYDOT's performance of eye exams is a public service for which immunity is waived. Wyo. Stat. Ann. § 1-39-108(a) provides:
Liability; public utilities.
(a) A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of public utilities and services including gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation .
(Emphasis added.)
[¶9] The district court held that "[t]he issuance of drivers' licenses, or the examination of license applicants' visual ability, are not in the same genre as the utilities or services listed in § 108," and therefore does not fall under the § 1-39-108 public utility exception. We agree. In Sponsel v. Park Cty. , 2006 WY 6, ¶ 12, 126 P.3d 105, 109 (Wyo. 2006), we recognized that the word "including" suggests "that there are other items includable, though not specifically enumerated." So although "public utilities and services" might include items in addition to "gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation," we held in Sponsel that "[t]he statutory construction rule of ejusdem generis instructs us that the legislature must have intended a catch-all phrase to include things similar to those specifically listed." Id. at ¶ 16, 126 P.3d at 109. In *147 Rice v. Collins Commc'ns, Inc. , 2010 WY 109, ¶ 20, 236 P.3d 1009, 1017 (Wyo. 2010), we applied the same reasoning to conclude that § 1-39-108 did not waive immunity for a fire page system, because it was not of the same genre as the listed public utilities, and we rejected the invitation to construe § 1-39-108"to make a public service of all things that are a 'public responsibility.' "
[¶10] The facts in Gibson v. State, Dep't of Revenue & Taxation , 811 P.2d 726 (Wyo. 1991) are on point. There, plaintiffs alleged that the driver who caused the deaths of their decedents was driving with a license that should have been revoked by the Department of Revenue and Taxation when it was advised by the insurer that the driver's insurance coverage was cancelled. Id. at 727. We rejected the appellant's argument that § 1-39-108 was ambiguous, and we held that statute's use of the term "ground transportation" referred to "a service that transports customers over the ground." It does not "include the authorities that license the public employees ...." Id. at 728. We likewise conclude that § 1-39-108 does not encompass the WDOT's administration of eye exams or issuance of driver's licenses, and therefore governmental immunity is not waived.
[¶11] Appellants urge us to find an exception in this case because the service of providing eye exams is also available through private parties. They cite to Wyo. Stat. Ann. § 1-39-102(a), which explains the purpose of the WGCA is, in part, to allow the state to "furnish certain services not available through private parties ...." First, we note that a legislative declaration of purpose is not binding. See Wyo. State Treasurer ex rel. Workmen's Comp. Dep't v. Niezwaag , 452 P.2d 214, 218 (Wyo. 1969). More importantly, the legislative purpose stated here is addressed to broad policy considerations. Here, the WYDOT administers highways and manages licensing, services which are not available through private parties. If in the course of providing those services, it provides some discrete services that are also available through private parties, that does not serve to defeat immunity.
II. Did the City of Riverton provide a public service for which governmental immunity has been waived by Wyo. Stat. Ann. § 1-39-108 when it provided a marked street crossing?
[¶12] The Archers next argue that the City was a public utility providing public services when it provided the marked street crossing where Sophia Archer was struck. Just like the eye examination discussed above, the provision of a marked street crossing is not of the same genre as the public utilities listed in § 1-39-108. In Sponsel , we held that "providing [ ] traffic control devices on county highways is not a public service for which immunity has been waived by the WGCA." 2006 WY 6, ¶ 16, 126 P.3d at 109. We fail to see any meaningful distinction between providing traffic control devices and providing marked street crossings. Neither is subject to the § 1-39-108 waiver of immunity. We also find, as the Sponsel court did, that if there were any waiver of immunity, it would be obviated by the language of Wyo. Stat. Ann. § 1-39-120(a), which specifically excludes
(a) ... liability for damages caused by:
(i) A defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area;
(ii) The failure to construct or reconstruct any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; or
(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.
We affirm the order dismissing the claims against the City of Riverton and Kyle Butterfield.
III. Did the Appellants preserve a claim that the governmental entities waived immunity under the insurance coverage exception at Wyo. Stat. Ann. § 1-39-118(b)(i) ?
[¶13] The Archers correctly assert that governmental immunity may be waived, pursuant to Wyo. Stat. Ann. § 1-39-118(b)(i), *148 to the extent that the "governmental entity has insurance coverage either exceeding the limits of liability ... or covering liability which is not authorized by" the WGCA. They contend that they had no opportunity to conduct discovery on the existence of insurance coverage before the case was dismissed. However, our standard of review requires us to accept the facts stated in the amended complaint as true, and there are no allegations regarding insurance coverage.[4]
[¶14] We affirm the district court's orders.

We will refer to the WYDOT and Jane Doe collectively as "the WYDOT."

At oral argument, Appellants argued for the first time that perhaps the individual employees were acting outside the scope of their duties and were thus not entitled to governmental immunity. Because the amended complaint specifically alleges that both Jane Doe and Kyle Butterfield were "acting within the scope of [their] employment and duties," we do not further address that contention.

We will refer to the City of Riverton and Kyle Butterfield collectively as "the City."

This is not a case in which the necessary information is unobtainable outside of the discovery process. Both the WYDOT and the City are governmental entities subject to the Public Records Act. Wyo. Stat. Ann. §§ 16-4-201 through 16-4-205 (LexisNexis 2017).